AO 106 (REV. 4/10) Affidavit for Search Warrant

**FILED**
**7/31/2023**
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Saqib M. Hussain, (312) 353-1414

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

Case No. 23 CR 404

The cellular telephones, further described in Attachments A-1, A-2, A-3, A-4, and A-5 (the "**Subject Phones**")

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Brennan Warren, a Special Agent of the United States Secret Service, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of Illinois, there is now concealed:

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 472 | possession, with intent to defraud, of falsely made, forged, counterfeited, or altered obligation or other security of the United States |
| Title 18, United States Code, Sections 912 | impersonation of an officer or employee of the United States |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

*Brennan Warren*
_____
*Applicant's Signature*

BRENNAN WARREN, Special Agent
United States Secret Service
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: July 29, 2023
_____
*Judge's signature*

City and State: Chicago, Illinois

YOUNG B. KIM, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT     )
                                      )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Brennan Warren, being duly sworn, state as follows:

1.      I am a Special Agent with the United States Secret Service. I have been so employed since approximately June 2022.

2.      As part of my duties as a USSS Special Agent, I investigate criminal violations relating to white collar crime, including mail, wire, and bank fraud, as well as of violations relating to counterfeit currency and securities. I have participated in the execution of multiple federal search warrants.

3.      This affidavit is made in support of an application for a warrant to search two white Apple iPhone cellular telephones, one red Apple iPhone cellular telephone, one purple Apple iPhone cellular telephone, and one blue Motorola smartphone (collectively, the "**Subject Phones**") for evidence and instrumentalities described further in Attachment B, concerning possession, with intent to defraud, of falsely made, forged, counterfeited, or altered obligation or other security of the United States offenses, in violation of Title 18, United States Code, Section 472, and concerning the impersonation of an officer or employee of the United States, in violation of Title 18, United States Code, Section 912 (the "**Subject Offenses**").

4.      The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from

persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 472 and 912, are located within the **Subject Phones**.

## I.    FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT PHONES

### A.        Summary

5.     On or about July 20, 2023 – after LEOs executed a court-authorized warrant on KRILICH's vehicle and found, among other items, a DHS Investigations badge, a United States Marshals Service badge, Federal Bureau of Investigations credentials (collectively, the "Fraudulent Federal Credentials"),[1] and approximately $800,000 in counterfeit U.S. Savings Bonds (the "Counterfeit Securities") – the Honorable Sunil R. Harjani, United States Magistrate Judge for the Northern District of Illinois, authorized a complaint in the instant case, charging KRILICH with possessing, with intent to defraud, falsely made, forged, counterfeited, or altered obligation or other security of the United States, in violation of Title 18, United States Code, Section 472.

---

[1] I contacted the Chicago field offices for DHS, USMS, and FBI, and learned that no one with the name Robert R. Krilich works at these agencies.

6.      During the traffic stop and search that led to KRILICH's arrest, law enforcement recovered the following five cellular telephones (collectively, the "**Subject Phones**"):

      a.      one white Apple iPhone cellular telephone in a black and translucent case, recovered from KRILICH's person incident to arrest ("**Subject Phone 1**");

      b.      one white Apple iPhone cellular telephone affixed with a white sticker that has "ATT NFI 128gb–440$" handwritten on it, located in a blue bag on the driver's-side rear passenger bench seat of KRILICH's vehicle ("**Subject Phone 2**";

      c.      one red Apple iPhone cellular telephone ("**Subject Phone 3**") housed in a translucent case affixed with a white sticker that has "312-776-5453" handwritten on it ("**Subject Phone 3**");

      d.      one purple Apple iPhone cellular telephone located in a blue bag on the driver's-side rear passenger bench seat of KRILICH's vehicle ("**Subject Phone 4**"); and,

      e.      one blue Motorola smartphone located in a blue bag on the driver's-side rear passenger bench seat of KRILICH's vehicle ("**Subject Phone 5**").

7.      As further explained below, KRILICH attempted to use **Subject Phone 1** to impersonate a member of federal law enforcement during the traffic stop. The

3

remaining **Subject Phones** were found commingled with the Fraudulent Federal Credentials, which demonstrates that KRILICH likely uses the **Subject Phones** and the Fraudulent Federal Credentials together to impersonate agents from multiple federal agencies.

**B.** **The Traffic Stop of KRILICH's Grey Ford Sedan and KRILICH's Arrest.[2]**

8.     On or about July 18, 2023, LEOs on patrol observed a grey Ford sedan with a piece of paper covering the license plate traveling southbound on River Road in Rosemont, Illinois.  LEOs conducted a traffic stop of the grey Ford sedan and spoke with the driver and sole occupant of the vehicle, who identified himself as Robert KRILICH.  KRILICH stated that he had just returned from Las Vegas and that when he picked up his vehicle (the grey Ford sedan) from the O'Hare parking lot.  KRILICH stated that he believed someone had stolen his license plates.

9.     LEOs were then able to remove a blank white piece of paper covering the vehicle license plate, and observed an Illinois license plate bearing registration DT27756, which, according to Illinois Secretary of State records, is registered to KRILICH.  LEOs entered KRILICH's name into a law enforcement database and learned that a Cook County arrest warrant had been issued for KRILICH for fraud.

---

[2] The events described in the following section are preserved on officer body-worn camera and in law enforcement reports.

10.     LEOs ordered KRILICH, who was still seated in the driver's seat of KRILICH's vehicle, to exit the vehicle. Initially, KRILICH refused the order and stated that KRILICH was calling Homeland Security.  KRILICH then stated that KRILICH worked for Homeland Security.  KRILICH then used **Subject Phone 1** to place a call and asked LEOs to speak with the individual KRILICH had called using **Subject Phone 1**.  The officer repeated his order for KRILICH to exit the vehicle. KRILICH complied and LEOs placed KRILICH in custody at approximately 3:59 p.m. on or about July 18, 2023.[3]

11.     After placing KRILICH into custody, LEOs conducted an inventory search of KRILICH's vehicle prior to towing the vehicle.  During the search, LEOs observed two blank Illinois vehicle registration titles, a badge bearing "Department of Homeland Security Special Agent," approximately $24,873 in United States currency, and five glass pipes with white powdery residue.

12.     Based on the officer at the scene's training and experience, the nature of the pipes, and the appearance of the residue, it appeared the residue in the pipes was from narcotics.

---

[3] At KRILICH's insistence, LEOs used **Subject Phone 1** to speak with the individual who KRILICH had dialed using **Subject Phone 1**.  According to law enforcement reports, the individual stated to LEOs, in relevant part, that KRILICH worked as a confidential source for the Las Vegas Metropolitan Police Department.  LEOs have since confirmed that KRILICH previously worked as a confidential source for the Las Vegas Metropolitan Police Department, and that KRILICH is not employed by any federal agency, including DHS.

5

13.     These recovered items were located in several bags in the rear bench seat of KRILICH's vehicle.  LEOs also observed a typewriter on the rear bench seat of KRILICH's vehicle.

14.     At approximately 4:06 p.m., LEOs learned from a representative of the Cook County Sherriff's Office that the Cook County warrant for KRILICH was no longer active and ended the inventory search.  At that time, LEOs did not seize the items observed in the bags on the rear bench seat of KRILICH's vehicle or the typewriter.  KRILRICH remained in custody for suspected violation of Chapter 625, Illinois Vehicle Code, Section 5/4-105 for offenses related to disposition of titles and registration and LEOs subsequently towed KRILICH's vehicle to a secure law enforcement location.

15.     At approximately 8:55 p.m. on or about July 19, 2023, LEOs advised KRILICH of his rights under Miranda.  KRILICH refused to speak with LEOs.

**C.          The Court-Authorized Search of KRILICH's Vehicle.**

16.     While in custody in a law enforcement squad vehicle and prior to being transported to the Rosemont Police Department for further investigation, KRILICH complained of chest pain.  LEOs called the Rosemont Fire Department and KRILICH was transported, via ambulance, to Resurrection Medical Center for further treatment.  KRILICH was released from Resurrection Medical Center in the evening of, on or about July 18, 2023, to the custody of LEOs, who transported KRILICH to the Rosemont Police Department for further investigation.

17.     Based on LEO's observations of KRILICH's vehicle, LEO's interactions with KRILICH during the traffic stop, and the items recovered from the preliminary inventory search of KRILICH's vehicle, LEOs applied for a search warrant of KRILICH's vehicle.  On or about July 19, 2023, at approximately 10:34 a.m., the Honorable Ellen Beth Mandeltort, Cook County Circuit Court Judge, authorized a search of KRILICH's vehicle.

18.     As detailed in the criminal complaint in this case, for the purposes of establishing probable cause that KRILICH had committed a violation of 18 U.S.C. § 472, LEOs executed the search warrant on KRILICH's vehicle and recovered, in various locations throughout KRILICH's vehicle, the following:

a.     approximately three dozen sheets of counterfeit U.S. Savings Bonds (the "Counterfeit Securities") in various manilla and file folders in the trunk of KRILICH's vehicle;

b.     approximately eight to ten print outs of Microsoft Excel Spreadsheets with serial numbers of "EE" series bonds inside of manilla folder in the trunk of KRILICH's vehicle;

c.     a typewriter on the rear bench seat;

d.     two laptop computers located in a blue bag on the rear driver's-side bench seat;

e.     blank Federal Bureau of Investigation (FBI) credentials on the rear bench seat;

7

f.      a silver United States Marshal Service (USMS) star made of a metallic substance on the rear bench seat; and

g.      a gold and blue, Department of Homeland Security (DHS) Investigations shield made of a metallic substance on the rear bench seat.

19.     Additionally, during the search, law enforcement recovered the following items from the reach bench seat:

a.      one white Apple iPhone (**Subject Phone 2**), one red Apple iPhone (**Subject Phone 3**), one purple Apple iPhone (**Subject Phone 4**), and one blue Motorola smartphone (**Subject Phone 5**) inside of a blue bag; and,

b.      a U.S. passport in the name of Robert Krilich with a gold-colored microchip affixed to the passport cover.

20.     As depicted herein in Attachment A-2, **Subject Phone 2** is affixed with a white sticker that has "ATT NFI 128gb–440$" handwritten on it, and as depicted herein in Attachment A-3, **Subject Phone 3** is affixed with a white sticker that has "312-776-5453" handwritten on it.[4] The stickers affixed to **Subject Phone 2** and **Subject Phone 3,** respectively, and their location in a bag in KRILICH's vehicle with two other cellular phones, indicate that **Subject Phone 2** and **Subject Phone 3** are not for personal use.

---

[4] Based on a law enforcement search of the TransUnion TLOxp, public records database, the phone number 312-776-5453 does not associate with KRILICH.

21.     As described above, law enforcement recovered **Subject Phones 2, 3, 4,** and **5** from inside of a blue bag that was on the bench seat of KRILICH's vehicle, along with the Fraudulent Federal Credentials from three different federal law enforcement agencies. The location of the Fraudulent Federal Credentials, adjacent to the blue bag containing **Subject Phones 2**, **3**, **4**, and **5,** demonstrates that KRILICH likely uses the **Subject Phones** and the Fraudulent Federal Credentials together to impersonate agents from multiple federal agencies.

**D.     The Subject Counterfeit Securities Recovered from KRILICH's Vehicle.**

22.     Based on my training and experience and the training and experience of other law enforcement officers trained in identifying counterfeit currency and securities, LEOs observed the following characteristics of the Counterfeit Securities indicating that they are counterfeit:

a.     One sheet of three Counterfeit Securities is printed on standard printer paper and not the material used to print official U.S. Savings Bonds, contains only a routing number and serial number, and is not issued in any person's name;

b.     Approximately one of the Counterfeit Securities had "No Good" or "Mistake" hand written in green marker on it;

c.     Approximately two of the Counterfeit Securities bear serial numbers that are in larger font size than the official font size used on U.S. Savings Bonds;

d. Approximately one of the Counterfeit Securities, is not in the proper rectangular shape used for official U.S. Savings Bonds, and has ink that has visibly bled through the paper; and,

e. Approximately three of the Counterfeit Securities have serial numbers that are not located in the standard location for serial numbers on official U.S. Savings Bonds;

f. Approximately one of the Counterfeit Securities, issued to "Arthur Pearson," had faded text that had bled through the paper;

g. Approximately two of the Counterfeit Securities, issued to "Daniel Francis Pilch," contain social security numbers that are not located in the standard location for social security numbers on official U.S. Savings Bonds.

23. On or about July 19, 2023, I submitted serial numbers for the Counterfeit Securities to the United States Treasury for review. According to a representative from the United States Treasury, based on the United States Treasury's review of the Counterfeit Securities serial numbers to date, as listed below, at least six of the Counterfeit Securities had registration numbers that do not match the registrant:

a. a Counterfeit Security in the amount of $5,000 bearing serial number B5919952EE;

b. a Counterfeit Security in the amount of $5,000 bearing serial number V3040188EE;

10

        c.      a Counterfeit Security in the amount of $10,000 bearing serial number X6600714EE;

        d.      a Counterfeit Security in the amount of $10,000 bearing serial number X1720194EE;

        e.      a Counterfeit Security in the amount of $5,000 bearing serial number V3040187EE; and,

        f.      a Counterfeit Security in the amount of $5,000 bearing serial number V3040016EE.

24. The total stated value of the Counterfeit Securities recovered from KRLICH's vehicle is approximately $800,000.

25. Since on or about July 18, 2023, the above-described **Subject Phones** have been in the government's custody and KRILICH has not expressed a possessory interest in the **Subject Phones**.

26. At the time of arrest, data stored on the **Subject Phones**, including text and voice mail messages sent and received by defendant during the course of the commission of the **Subject Offenses** were not known. Based upon my training and experience, I know that cellular phones may contain relevant evidence of the **Subject Offenses**, including text messages made or received from the **Subject Phones** that are located in the memory of the **Subject Phones**, which messages may provide information regarding the identities of, and the methods and means of operation and communication used by, the participants in the **Subject Offenses**. Moreover, digital

11

photographs located in the memory of the **Subject Phones** may contain images of the tools or participants involved in the **Subject Offenses**. Moreover, digital photographs stored in the **Subject Phones** may contain images of the user of the **Subject Phones**, the user's associates (including persons involved in or knowledgeable about the subject offenses), places frequented by the user of the phone leading up to and during the subject offenses, and locations and instrumentalities used in committing the subject offenses.

27. In addition, based on my training and experience, I know that information stored within a cellular phone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored within a cell phone can indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, contacts lists, instant messaging logs, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the cell phone at a relevant time. Further, such stored electronic data can show how and when the cell phone and its related account were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cell phone access, use,

12

and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cell phone account owner.

28. Additionally, information stored within a cell phone may indicate the geographic location of the cell phone and user at a particular time (*e.g.*, location integrated into an image or video sent via email or text message to include both metadata and the physical location displayed in an image or video). Stored electronic data may also provide relevant insight into the cell phone owner's state of mind as it relates to the offense under investigation. For example, information in the cell phone may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement). Unless this data is destroyed, by breaking the cell phone itself or by a program that deletes or over-writes the data contained within the cell phone, such data will remain stored within the cell phone indefinitely.

29. Through experience as a law enforcement officer and through the experience of other law enforcement officers as conveyed to me, I have learned that individuals involved in criminal offenses commonly use cellular telephones as a means to communicate. Individuals involved in criminal offenses also often store telephone numbers and names or nicknames of fellow conspirators on their telephones and the telephones also reflect recent call history. Finally, individuals often use text messaging and digital photographs in furtherance of their criminal

13

activity that are stored on cellular telephones. Because, as explained above, the **Subject Phones** is associated the KRICLICH, because, (a) as described above, in the presence of law enforcement conducting a traffic stop on KRILICH while KRILICH was driving KRILICH's vehicle, KRILICH used the **Subject Phones** to contact other individuals during law enforcement's investigation of KRILICH in connection with the **Subject Offenses**, and because (b) in my experience and in the experience of other agents, defendants use telephones to contact co-conspirators, there is probable cause to believe the **Subject Phones**, described further in Attachment A, contains evidence of violations of possession, with intent to defraud, of falsely made, forged, counterfeited, or altered obligation or other security of the United States.

## II.   SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

30.   Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.   Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence,

14

he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.     Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

31.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

15

32.    In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## III.    PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

33.    Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

34.    The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will

16

not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

        c.      surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

        d.      opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

35.    The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

17

## IV.    CONCLUSION

36.    Based on the above information, I respectfully submit that there is probable cause to believe that possession, with intent to defraud, of falsely made, forged, counterfeited, or altered obligation or other security of the United States offenses, in violation of Title 18, United States Code, Section 472, and impersonation of an officer or employee of the United States, in violation of Title 18, United States Code, Section 912, have been committed, and that evidence and instrumentalities relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Phones**, as further described in Attachment A-1. I therefore respectfully request that this Court issue a search warrant for the **Subject Phones** more particularly described in Attachment A-1, authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.

FURTHER AFFIANT SAYETH NOT.

*Brennan Warren*
Brennan Warren
Special Agent
United States Secret Service

Sworn to and affirmed by telephone 27th day of July, 2023

Honorable YOUNG B. KIM
United States Magistrate Judge

18

**ATTACHMENT A-1**

**DESCRIPTION OF ITEM TO BE SEARCHED**

As depicted below, the white Apple iPhone cellular telephone ("**Subject Phone 1**") housed in a translucent and black case, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from the person of defendant Robert R. KRLICH at the time of his arrest, and currently in the custody of the United States Secret Service:

 

## ATTACHMENT A-2

## DESCRIPTION OF ITEM TO BE SEARCHED

As depicted below, the white Apple iPhone cellular telephone ("**Subject Phone 2**") affixed with a white sticker that has "ATT NFI 128gb–440$" handwritten on it, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRLICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:

 

**ATTACHMENT A-3**

**DESCRIPTION OF ITEM TO BE SEARCHED**

As depicted below, the red Apple iPhone cellular telephone ("**Subject Phone 3**") housed in a translucent case affixed with a white sticker that has "312-776-5453" handwritten on it, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRILICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:

 

3

**ATTACHMENT A-4**

**DESCRIPTION OF ITEM TO BE SEARCHED**

As depicted below, the purple Apple iPhone cellular telephone ("**Subject Phone 4**"), housed in a translucent case, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRLICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:

 

4

**ATTACHMENT A-5**

**DESCRIPTION OF ITEM TO BE SEARCHED**

As depicted below, the blue Motorola smartphone ("**Subject Phone 5**"), seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRILICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:




5

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 472 and 912, as follows:

1. Data, records, or information relating to the phone owners' contacts or communications with co-conspirators engaged, planning, or preparing to engage, in the **Subject Offenses**;

2. Records, documents, programs, applications or materials relating to the disposition, or planned disposition, of proceeds obtained from the **Subject Offense**;

3. Records, items, and documents reflecting travel for participating in the **Subject Offenses**, including Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations;

4. Audio recordings, pictures, video recordings, or still-captured images relating to the **Subject Offenses**;

5. Indicia of control, possession, or ownership of the **Subject Phones** described in this warrant, such as telephone bills, payment receipts, photographs, and bank or financial records.

## ADDENDUM TO ATTACHMENT B

The government's review of electronic storage media, including cell phones, already in its possession shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B.

The review of electronically stored information and electronic storage media described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that

same data or other item if it also contains evidence of crimes within the scope of this warrant.

AO 93 (Rev. 11/13) Search and Seizure Warrant                    AUSA Saqib M. Hussain, (312) 353-1414

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:                    Case No. 23 CR 404

The cellular telephone, further described in
Attachment A-1, A-2, A-3, A-4, and A-5 (the "**Subject
Phones**")

## SEARCH AND SEIZURE WARRANT

To: Brennan Warren and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of Illinois:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment B

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>August 12, 2023</u> in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>July 29, 2023</u> @ 12:10pm _____
                                                    *Judge's signature*

City and State: <u>Chicago, Illinois</u> _____ YOUNG B. KIM, U.S. Magistrate Judge
_____                    *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

 

_____
*Executing officer's signature*

_____
*Printed name and title*

### ATTACHMENT A-1

### DESCRIPTION OF ITEM TO BE SEARCHED

As depicted below, the white Apple iPhone cellular telephone ("**Subject Phone 1**") housed in a translucent and black case, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from the person of defendant Robert R. KRLICH at the time of his arrest, and currently in the custody of the United States Secret Service:

 

**ATTACHMENT A-2**

**DESCRIPTION OF ITEM TO BE SEARCHED**

As depicted below, the white Apple iPhone cellular telephone ("**Subject Phone 2**") affixed with a white sticker that has "ATT NFI 128gb–440$" handwritten on it, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRLICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:

 

2

## ATTACHMENT A-3

## DESCRIPTION OF ITEM TO BE SEARCHED

As depicted below, the red Apple iPhone cellular telephone ("**Subject Phone 3**") housed in a translucent case affixed with a white sticker that has "312-776-5453" handwritten on it, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRILICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:

 

## ATTACHMENT A-4

## DESCRIPTION OF ITEM TO BE SEARCHED

As depicted below, the purple Apple iPhone cellular telephone ("**Subject Phone 4**"), housed in a translucent case, seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRLICH's vehicle pursuant to a court-authorized search of KRLICH's vehicle, and currently in the custody of the United States Secret Service:

 

4

## ATTACHMENT A-5

## DESCRIPTION OF ITEM TO BE SEARCHED

As depicted below, the blue Motorola smartphone ("**Subject Phone 5**"), seized by law enforcement on or about July 18, 2023, near 5440 North River Road in Rosemont, Illinois from a blue bag on the rear driver-side bench seat of defendant Robert R. KRLICH's vehicle pursuant to a court-authorized search of KRILICH's vehicle, and currently in the custody of the United States Secret Service:



## <u>ATTACHMENT B</u>

## LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 472 and 912, as follows:

1.      Data, records, or information relating to the phone owners' contacts or communications with co-conspirators engaged, planning, or preparing to engage, in the **Subject Offenses**;

2.      Records, documents, programs, applications or materials relating to the disposition, or planned disposition, of proceeds obtained from the **Subject Offense**;

3.      Records, items, and documents reflecting travel for participating in the **Subject Offenses**, including Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations;

4.      Audio recordings, pictures, video recordings, or still-captured images relating to the **Subject Offenses**;

5.      Indicia of control, possession, or ownership of the **Subject Phones** described in this warrant, such as telephone bills, payment receipts, photographs, and bank or financial records.

## ADDENDUM TO ATTACHMENT B

The government's review of electronic storage media, including cell phones, already in its possession shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B.

The review of electronically stored information and electronic storage media described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that

same data or other item if it also contains evidence of crimes within the scope of this warrant.